IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02559-REB-KLM

NICKY L. SMITH,

    Plaintiff,

v.

CPT. SCOTT GIBSON,

    Defendant.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendant's Motion for Summary Judgment** [Docket No. 36; Filed October 31, 2011] (the "Motion"). The Motion is referred to this Court for disposition. *See* [Docket No. 48; Entered June 8, 2012]. Pursuant to Fed. R. Civ. P. 6 and D.C.COLO.LCivR 7.1C., Plaintiff's response to the Motion was due on or before November 25, 2011. Plaintiff did not timely respond, thus the Court issued an Order to Show Cause on June 11, 2012. [#49]. Plaintiff responded to the Order to Show Cause with a letter requesting counsel, *see* [#51], and after further instruction by the Court, *see* [#53], filed a response in opposition to the Motion [#55]. The Court has reviewed the briefing, the case file, and the applicable law, and is fully advised in the premises. For the reasons stated below, the Court respectfully recommends that Defendant's Motion be **GRANTED**.

## I. Background

Plaintiff is a state prisoner in the custody of the Colorado Department of Corrections and is incarcerated at the Sterling Correctional Facility ("SCF") in Sterling, Colorado. [#8] at 1. Plaintiff initiated this lawsuit *pro se* pursuant to 42 U.S.C. § 1983 on October 20, 2010. [#3]. Plaintiff brings one claim alleging excessive force against Defendant. *See* [#8] at 2. Plaintiff asserts that on February 19, 2009, Defendant entered Plaintiff's prison cell "with many jack booted thugs" and "assaulted [Plaintiff] utilizing an illegal restraint chair." [#3] at 4. As a result, Plaintiff contends that he "suffered a broken wrist, bruised kidneys, cracked ribs, torn cartiliage [sic] in his elbow, [and] a dislocated disc in his back." *Id.* Plaintiff further attests that he was "refused medical attention for 17 months." *Id.* Plaintiff does not designate whether he sues Defendant in Defendant's official or individual capacity (or both capacities), and requests only monetary damages as relief. *See id.* at 8.

Defendant answered Plaintiff's Complaint on March 21, 2011, and filed the instant Motion on October 31, 2011. [## 22, 36]. Defendant contends that Eleventh Amendment immunity precludes Plaintiff's claim against him in his official capacity to the extent that Plaintiff requests monetary damages. *Id.* at 7. Defendant asserts qualified immunity as a bar to Plaintiff's claim against him in his individual capacity, as Defendant contends that Plaintiff cannot prove a violation of his rights. *Id.* at 16. Defendant avers that Plaintiff cannot prove his personal participation in the alleged wrong, and cannot prove a colorable claim against Defendant in his supervisory capacity. *Id.* at 11-13. Defendant further argues that Plaintiff did not properly exhaust administrative remedies, because the remedy Plaintiff sought in the grievances that he filed was not available. *Id.* at 13.

In response, Plaintiff clarifies that he brings his claim pursuant to the Fourth, Eighth, and Fourteenth Amendments, and that he sues Defendant in his individual and official capacities. [#55] at 1, 2. Plaintiff counters Defendant's factual statement, but does not offer any evidentiary support for his contentions. *See id.* at 2, 3-4. Plaintiff believes that Defendant is not entitled to qualified immunity, because Defendant "should [have] know[n] that to excessively beat and stomp an unconscious and noncombatitive [sic] prisoner is a violation of law." *Id.* at 4.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant

carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).  Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded.  *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's Complaint [#3] and Response [#55], the Court is mindful that it must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted). As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts." *Taylor*, 34 F.3d at 269 (citations omitted).

### III. Statement of Undisputed Material Facts

Pursuant to Fed. R. Civ. P. 56(c), when submitting a motion for summary judgment for the Court's review, "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . documents [and] affidavits." If the responding party (here, Plaintiff) "fails to properly address [the movant's] assertion of fact as required by Rule 56(c)," the Court may "grant

summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Defendant included a "Statement of Undisputed Facts" in his Motion. [#36] at 2-6. Review of Plaintiff's Response demonstrates to the Court that although Plaintiff offers conclusory factual statements in opposition to the Motion, Plaintiff proffers no substantive challenge to the factual statement presented by Defendant, and includes no evidentiary support for his assertions of fact. *See* [#55] at 2, 3-4. The Court, after review of Defendant's statement of facts and accompanying evidentiary support, concludes that Defendant's statement is properly supported. The Court recommends finding that the following facts are material and undisputed:

1. Defendant is a former employee of the Colorado Department of Corrections ("CDOC"). *Compl.*, [#3] at 2. Defendant was a CDOC employee during the time relevant to Plaintiff's Complaint. *Id.*

2. On February 19, 2009, Plaintiff was in his cell which is located in Living Unit 5 at SCF. *Id.* at 4; Incident After Action Report ("Action Report"), [#36-1] at 1.

3. Plaintiff was placed on Special Controls, which is a temporary modification of an inmate's normal living situation. Aff. of Scott Gibson ("Gibson Aff."), [#37] at 2, ¶ 5; Action Report, [#36-1] at 1. Special Controls involve strip-searching an inmate for contraband, removing all clothes except boxer shorts, and placing an inmate in a stripped cell. Gibson Aff., [#37] at 2, ¶ 8; Action Report, [#36-1] at 1.

4. Plaintiff was placed on Special Controls due to an incident earlier in the day which occurred when Plaintiff threw a broom at a staff member. Notice of Charge, [#36-15] at 1.

5. When Plaintiff refused to be placed on Special Controls, as ordered, the cell

extraction team ("Force Cell Team") was assembled. *Id.*

6. The use of Special Controls is a correctional procedure for maintaining security and assuring the safety of inmates and staff. Special Controls are gradually lifted as an inmate's behavior improves. An inmate who gains control of his behavior will be removed from Special Controls faster than an inmate who continues to exhibit disruptive, threatening behavior. Gibson Aff., [#37] at 2, ¶ 8; 6, ¶ 31; 7, ¶ 35.

7. Plaintiff was given three orders by Defendant to strip down and cuff up, which he refused. Action Report, [#36-1] at 1.

8. The Force Cell Team was activated and fully briefed before approaching Plaintiff's cell at approximately 4:35 p.m. *Id.*; Farquhar Incident Report, [#36-2] at 2; Ralston Incident Report, [#36-3] at 2.

9. Plaintiff became compliant and stopped resisting upon the Force Cell Team's arrival at his cell door. Farquhar Incident Report, [#36-2] at 2; Ralston Incident Report, [#36-3] at 2; Video of force cell extraction, [#39].

10. Plaintiff was then strip-searched and hand-cuffed without incident. *Id.*; *see also* Rembe Incident Report, [#36-4] at 2; Tipton Incident Report, [#36-5] at 2.

11. Plaintiff exited his cell and was placed in ankle restraints. Tipton Incident Report, [#36-5] at 2; Wagner Incident Report, [#36-9] at 2.

12. Plaintiff was assisted into a transport chair, a spit mask was placed over his face, and a blanket placed over his body. Video of force cell extraction, [#39] (conventionally submitted and sealed).

13. Plaintiff was escorted in the transport chair to Living Unit 7 and an anatomical medical examination was completed. Action Report, [#36-1] at 1.

7

14. Plaintiff was seen by medical staff twice after the incident on February 19, 2009. Affidavit of Dr. Paula Frantz ("Frantz Aff."), [#36-14] at 2, ¶¶ 12-16.  Plaintiff did not report or complain of the injuries he lists in his Complaint.  *Id.* at ¶¶ 17-24, 26.

15. Plaintiff received a Code of Penal Discipline ("COPD") charge and conviction for Advocating or Creating Facility Disruption as a result of the February 19, 2009 incident. Notice of Charge, [#36-15].

16. The process and procedures for the filing of a grievance are outlined in Administrative Regulation 850-04.  [#36-21].

17.  In his Step 1 Grievance, Plaintiff sought monetary damages of "35 million."  See Step 1 Grievance dated 9/21/09, [#36-16] at 4.

18. Plaintiff signed his grievance on September 21, 2009, which is approximately 214 days from the date of the February 19, 2009 incident.  *Id.*

19. Plaintiff filed a Step 2 Grievance on October 16, 2009, and a Step 3 Grievance on January 14, 2010.  [#36-16] at 3 (Step 2 Grievance ), 2 (Step 3 Grievance).

20. In the administrative response to Plaintiff's Step 3 Grievance, Grievance Officer Anthony A. DeCesaro stated that Plaintiff had not exhausted administrative remedies due to Plaintiff's failure to satisfactorily request allowable relief.  Step 3 Grievance Response dated Feb. 4, 2010, [#36-16] at 1.

21. Plaintiff represented that he exhausted available administrative remedies in his Complaint.  *Compl.*, [#3] at 7.

## IV. Analysis

### A. Exhaustion of Administrative Remedies

The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that a claim regarding prison conditions must first be exhausted before a prisoner may challenge those conditions by filing suit. *Porter v. Nussle*, 534 U.S. 516, 520 (2002) ("1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."). Specifically, the exhaustion provision states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). However, the burden is not on Plaintiff to sufficiently plead exhaustion or attach exhibits to his Complaint proving exhaustion. *Jones*, 549 U.S. at 215. Rather, the burden is on Defendant to assert the failure to exhaust in a dispositive motion. Here, Defendant's failure to exhaust defense is analyzed pursuant to Fed. R. Civ. P. 56. As such, if the evidence presented does not create a genuine issue in Plaintiff's favor as to whether his claim against Defendant was properly exhausted, the Complaint must be dismissed without prejudice. *Arocho v. Lappin*, No. 07-cv-02603-REB-KLM, 2011 WL 2292187, at *8 (D. Colo. Apr. 21, 2011) (citing *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (noting that dismissal of unexhausted claims on summary

9

judgment should be without prejudice); *cf. Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006) (recognizing that dismissal of untimely grievance should be with prejudice), *overruled in part on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008).

The prison facility is tasked with the responsibility of establishing grievance procedures. *Jones*, 549 U.S. at 218 ("[I]t is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion."). "Compliance with prison grievance procedures, therefore, is all that is required by PLRA to 'properly exhaust.'" *Baldauf v. Garoutte*, No. 03-cv-01104, 2007 WL 2697445, at *4 (D. Colo. Sept. 11, 2007) (unpublished decision) (citation omitted). Relevant to the instant matter, the operative grievance procedure is delineated in Administrative Regulation ("AR") 850-04. *See* [#36-21]. Pursuant to Section H of AR 850-04, "[a] Step 1 grievance must be filed no later than 30 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance." *Id.* at 6.

In the instant case, Plaintiff filed his Step 1 grievance nearly 214 days after the incident in dispute. [#36-16] at 4. The Step 1 grievance was denied on the basis of untimeliness, as well as on grounds of improper requested relief and the general merits of Plaintiff's complaint. *See id.* at 5. The response to Plaintiff's Step 2 grievance affirmed the initial response, and stated that Plaintiff had "failed to accept responsibility for [his] negative behavior and disruptive actions during the Incident and subsequent consequences." *Id.* at 3. The final response explained that Plaintiff had not exhausted available administrative remedies, because the remedy sought by Plaintiff was unavailable. *Id.* at 1. The final response indicated that it was "the final administrative action in this matter." *Id.*

Although in most circumstances an untimely-filed grievance would not serve to exhaust administrative remedies as required by the PLRA, the Tenth Circuit has also held that "if a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court." *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *cf. Barron-Baca v. Shoemaker*, 118 F. App'x 374, 376 (10th Cir. 2004) ("Regardless of whether a prisoner goes through the formality of submitting a time-barred grievance, he may not successfully argue that he had exhausted his administrative remedies . . . .") (citation omitted). Here, prison officials denied Plaintiff's grievances on the bases of untimeliness, an improper remedy request, and the merits. It is a close call, but the Court is reluctant to recommend entry of judgment against Plaintiff solely on the basis of his alleged failure to exhaust in the circumstances at issue, *i.e.*, a series of mixed administrative responses. Thus, the Court declines to recommend that Defendant's Motion be granted to the extent that it seeks a determination that Plaintiff failed to exhaust administrative remedies. The Court proceeds to evaluate Defendant's assertions of Eleventh Amendment and qualified immunity.

**B.     Eleventh Amendment Immunity**

"It is well established that under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent." *Hunt v. Colo. Dep't of Corr.*, 271 F. App'x 778, 780 (10th Cir. 2008) (citation omitted). The Eleventh Amendment protections extend "to state agencies functioning as an arm of the state." *Id.* (citation omitted). Further, "[s]uits against state officials in their official capacity should be treated as suits

against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (stating that state officers sued in their official capacity are not "persons" subject to suit under 42 U.S.C. § 1983). Eleventh Amendment immunity may be waived by an Act of Congress or by a state, "through a clear expression of its intent to waive." *Hunt*, 271 F. App'x at 780-81. 42 U.S.C. § 1983 did not abrogate Eleventh Amendment immunity. *See id.* at 781 (citations omitted).

Here, Plaintiff seeks only money damages against Defendant, who is sued in his official and individual capacities. *Compl.*, [#3] at 8; *Resp.*, [#55] at 2. Pursuant to the Eleventh Amendment, the Court lacks subject matter jurisdiction to adjudicate an action brought by a citizen of Colorado against the state of Colorado, its agencies, or its officials in their official capacities for money damages or for injunctive relief for prior acts. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995); *see also Hunt*, 271 F. App'x at 781. Thus, the Court recommends that Defendant's Motion be granted to the extent that judgment be entered in Defendant's favor as to Plaintiff's claim against him in his official capacity, on the basis of Eleventh Amendment immunity.

**C.    Qualified Immunity**

Defendant asserts qualified immunity as to Plaintiff's claim. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity also offers protection from trial and other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

12

"[B]ecause qualified immunity is 'designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," the Court reviews summary judgment motions involving a qualified immunity defense "somewhat differently" from other motions for summary judgment. *Clark v. Edmunds*, 513 F.3d 1219, 1221 (10th Cir. 2008) (internal citations omitted). When a defendant asserts a qualified immunity defense in a summary judgment motion, "[t]he threshold inquiry is whether the . . . evidenced facts . . . taken in the light most favorable to the plaintiff show a constitutional violation." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court must also consider whether Plaintiff has shown that "the constitutional right was clearly established at the time of the alleged unlawful activity." *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

In order for Plaintiff's claim "to survive summary judgment, the record must contain facts that rebut the presumption of [Defendant's] immunity from suit." *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001) (discussing special nature of qualified immunity defense); *see Rounds v. Corbin*, No. 04-cv-02532-CMA-KMT, 2009 WL 2982006, at *2-3 (D. Colo. Sept. 11, 2009) (denying summary judgment motion on qualified immunity where plaintiff "submitted more than unsupported allegations" to support his claim); *Kelley v. City of Albuquerque*, 375 F. Supp. 2d 1183,1203 n.7 (D.N.M. 2004) (citing *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)) (noting that to overcome defendant's motion for summary judgment on basis of qualified immunity, "plaintiff must do more than rest on its own speculation or pleadings"); *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 593 (10th Cir. 1999) (denying summary judgment on qualified immunity where the

"[t]he record supports the allegation that the plaintiffs' Fourth Amendment rights were violated"); *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) (noting that when "a government official raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must produce facts sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred").

Plaintiff bears the burden of proving that Defendant's actions violated clearly established law. *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994). *See Saucier*, 533 at 201("[W]hether the right was clearly established . . . must be undertaken in light of the specific context of the case, not as a broad general proposition."). "[T]he right the official is alleged to have violated must have been "clearly established" in a particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right." *Id.* at 202 (citation omitted). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct. . . . If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205. After all, "qualified immunity precludes the imposition of liability for 'all but the *plainly incompetent* or those who knowingly violate the law.'" *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted).

It is no longer mandatory that the Court first consider whether Plaintiff has demonstrated a constitutional violation by Defendant; using its discretion, the Court may move immediately to an analysis of whether the right at issue was clearly established at the

time of the alleged violation. *Pearson*, 555 U.S. at 236. In this matter, it is appropriate to first address whether Plaintiff has demonstrated that Defendant violated his constitutional rights.

Plaintiff presents no evidence whatsoever with his Response. *See* [#55]. Plaintiff merely contends that the alleged beating of which he complains was not recorded, either by video or in the incident reports. *See id.* at 3-4. This conclusory statement, unsupported by evidence and unmentioned in the Complaint, is not enough to counter Defendant's properly supported assertion of qualified immunity. *E.g., Simms*, 165 F.3d at 1326 ("the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof."); *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995) ("Once the affirmative defense of qualified immunity is asserted, the plaintiff bears the burden of coming forward with facts sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred." (citation and internal quotation omitted)); *see also Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) ("conclusory and self-serving affidavits are not sufficient" to establish a genuine issue of material fact).

In any event, the Court finds that the evidence proffered by Defendant demonstrates an absence of a genuine fact issue regarding whether Defendant violated Plaintiff's constitutional rights. "Excessive force claims in the prison setting are generally analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment." *Smith v. Nichols*, No. 09-cv-01139-MSK-BNB, 2011 WL 996871, at *4 (D. Colo. Mar. 18, 2011) (citations omitted). The Court must examine "the nature and extent of the force used in

light of contemporary standards of decency," as well as "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Id.* at *5 (citations omitted). The use of a restraint chair by prison officials for a limited time frame is not *per se* unconstitutional. *See, e.g., Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000) (finding limited use of restraint chair to be constitutional, in absence of a "sufficiently culpable state of mind" by defendants); *Prigmore v. Bryant*, No. 4:09-2849-GRA-TER, 2010 WL 2696525, at *4 n.5 (D.S.C. Apr. 26, 2010) (recognizing that inmate's placement "in a restraint chair for twelve hours was not a *per se* constitutional violation" (citation omitted)); *Zimmerman v. Schaeffer*, No. 1:06-cv-01893, 2009 WL 5111765, at *5 (M.D. Pa. Dec. 16, 2009) (finding no evidence in the record to indicate that "a definite length of time in [a restraint chair] is *per se* excessive").

Here, it is undisputed that Plaintiff refused Defendant's orders three times, then Defendant invoked the "Special Control" protocol to remove Plaintiff from his cell. There can likewise be no genuine dispute that Plaintiff was unrestrained as soon as he became compliant, and the entire process lasted less than thirty minutes. Video of force cell extraction, [#39] (conventionally submitted and sealed). The Court reviewed the video recording of the force cell extraction, and the recording corroborates the individual officers' reports as well as the Action Report. *See id.* Thus, the undisputed record before the Court supports Defendant's position that Plaintiff's constitutional rights were not violated, and Defendant is thus entitled to qualified immunity.

Although the Court must review "the evidence in the light most favorable to the nonmoving party, . . . the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden [of establishing the elements required to overcome an assertion of

16

qualified immunity]; otherwise, the defendant [is] entitled to qualified immunity." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citation omitted). The record before the Court is devoid of any evidence demonstrating that Plaintiff has met his burden of establishing that Defendant violated his constitutional rights, and, as stated, supports Defendant's assertions. Plaintiff fails to rebut the presumption of Defendant's entitlement to qualified immunity, and no genuine issue of material fact exists as to the presented issue. Therefore, the Court recommends that judgment enter in favor of Defendant as to Plaintiff's claim against him in his individual capacity.

## V. Conclusion

Accordingly,

IT IS RESPECTFULLY **RECOMMENDED** that Defendant's Motion for Summary Judgment [#36] be **GRANTED**, and judgment enter in favor of Defendant as to Plaintiff's single claim.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review

by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated July 18, 2012, at Denver, Colorado.

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge